## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **ROGER M. BANHI,** | * | |
| | * | |
| *Plaintiff,* | * | |
| | * | |
| v. | * | Civil Action No.: RWT-12-0665 |
| | * | |
| **PAPA JOHN'S USA, INC,** | * | |
| and | * | |
| **COLONEL'S LIMITED, LLC,** | * | |
| | * | |
| *Defendants.* | * | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Roger M. Banhi initiated this lawsuit against his former employers, Papa John's USA, Inc., and Colonel's Limited, LLC, as well as two of his former supervisors, Victor Paz and Ulises Viscencio, on March 1, 2012. ECF No. 1. Initially *pro se*, Plaintiff later acquired counsel[1] and filed an amended complaint on June 26, 2012 alleging seventeen counts of employment discrimination and one count of assault against various groupings of the defendants. ECF No. 13. On August 31, 2012, Papa John's and Colonel's filed a joint motion to dismiss for failure to state a claim, or in the alternative, for summary judgment. ECF No. 31. Plaintiff filed an opposition on September 28, 2012. ECF No. 39.

On October 4, 2012, the parties stipulated to the dismissal of all but four counts. ECF No. 40.[2] Plaintiff's remaining counts against Papa John's and Colonel's allege that he experienced (1) disparate treatment on the basis of race and national origin in violation of Title VII of the Civil

---

[1] Plaintiff has had two attorneys represent him at various times during these proceedings but is now again proceeding *pro se*. *See* ECF Nos. 25, 26, 48–50.

[2] All counts alleged against Mr. Paz and Mr. Viscencio were voluntarily dismissed. ECF Nos. 12, 40.

Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.*; (2) disparate impact on African-Americans and non-Hispanic employees in violation of Title VII; (3) retaliation in violation of Title VII; and (4) a hostile work environment based on his race in violation of Title VII. ECF No. 12. On October 24, 2012, Defendants filed their reply memorandum in support of their motion to dismiss or for summary judgment. ECF No. 45.

For the reasons discussed below, Defendants' motion will be granted.

## **BACKGROUND**

Plaintiff is an African-American man who was employed by Papa John's as a part-time pizza delivery driver intermittently since 1993. ECF No. 12 at ¶¶ 10, 11. His most recent stint with the company, at Maryland locations operated by Colonel's, began on February 25, 2008 and lasted for nearly one year. *Id.* at ¶¶ 11, 28. When he began in February, his base pay was $6.15 per hour. *Id.* at ¶ 11.

On May 15, 2008, Papa John's Regional Operations Manager, Tim Knezevich, issued a Driver Pay Notice to all delivery drivers. ECF Nos. 31-1 at 3, 31-3, 45-1.[3] The notice informed all drivers that their base pay would be reduced to $5.15 per hour but indicated that the company would "grandfather" in drivers at the current, higher pay rate if their performance was "above average." ECF No. 31-3. The notice further informed drivers that punctuality and reporting for work in full and clean uniform were both part of being an "above average" delivery driver. *Id.*

In June of 2008, Plaintiff's base salary was reduced to $5.15 per hour. ECF No. 12 at ¶ 13. Plaintiff claims his work was "exemplary and without blemish" and alleges the pay reduction

---

[3] Plaintiff half-heartedly disputes the authenticity of the notice Defendants provide in their filings. ECF No. 39-1 at 10. However, he does not actually deny receiving the notice and Defendants provide the affidavit of a former delivery driver at Plaintiff's Papa John's location who avers that the notice was posted in the store and that all delivery drivers received the notice stapled to a paycheck. ECF No. 45-6 at ¶ 5–6.

was because he complained about unequal and discriminatory treatment. ECF Nos. 12, 39-1 at 2.[4] He also alleges that "none of the Hispanic employees' salaries were reduced." ECF No. 12 at ¶ 13.

Defendants assert that Plaintiff's pay was reduced because he had a track record of tardiness and absences. ECF No. 31-1 at 3. They provide affidavits and timesheets indicating he was late or absent for about seventy-five percent of his shifts. *Id*. Defendants also note that Plaintiff often did not comply with the uniform standards, another factor in the decision not to maintain his above-normal pay rate. *Id*. Plaintiff does not dispute that he often was late or absent and sometimes failed to be in uniform but states in his affidavit that he obtained prior verbal approval from managers every time. ECF No. 39-1 at 2–3; ECF No. 39-13 at 4. Additionally, Defendants provide affidavits and documentation showing that of the eighteen delivery drivers whose pay was reduced, four were Hispanic. ECF Nos. 45-1, 45-4.

On July 8, 2008 and October 28, 2008, Plaintiff wrote to Papa John's management to complain of harassment and withheld pay. ECF No. 39-1 at 2–3. Nowhere in these letters did he assert the alleged misconduct inflicted upon him was motivated by race or national origin. *See* ECF Nos. 39-2–39-3.

On January 14, 2009, an altercation occurred between Plaintiff and the Assistant Store Manager, Mr. Paz. ECF No. 12 at ¶¶ 14–21. When Plaintiff sought to leave at the end of an unscheduled shift, Mr. Paz allegedly threatened him with termination, cursed at him, and shoved him. *Id*. at ¶¶ 16–18. Again, Plaintiff does not assert in his complaint, nor did he allege in the letter he sent to Papa John's management the next day, that his treatment during the January 14 incident was based on his race or national origin, nor was any racially-charged language used

---

[4] There are no specifically alleged or documented complaints that Plaintiff made to his superiors

during the altercation. *Id*.; ECF No. 39-4. Plaintiff alleges at least one other similar incident occurred but does not specifically contend the purported harassment was motivated by his race or national origin. ECF No. 39-1 at 4.

Plaintiff also alleges that on at least one occasion he was subjected to "racial slurs" by fellow employees, including being called "Nigger," and that his pay was supposedly withheld for taking breaks whereas the same was not done for Hispanic employees. *Id*. at ¶ 28. He further alleges that Hispanic drivers were given a computer password allowing them to take more than two orders simultaneously and thus earn more in tips, but he was not given such a password. *Id.* at ¶ 11,

On February 2, 2009, Plaintiff left his employment with Papa John's. ECF No. 12 at ¶ 28. He submitted an intake form with the Equal Employment Opportunity Commission ("EEOC") on February 5, 2009 asserting discrimination alleging discrimination on the basis of race, disability, national origin, and color, as well as retaliation in violation of Title VII, against Papa John's and Colonel's. ECF No. 39-6 at 2. On April 8, 2009, the Plaintiff filed a charge of discrimination with the EEOC. ECF No. 39-7. Plaintiff's EEOC charge alleged that he was paid less than similarly situated Hispanic employees, that he was denied the password that would have allowed him to garner more in tips, that he was verbally harassed, that his pay was stolen, that he was repeatedly discharged and rehired, and that he was constructively discharged. *Id*.

On September 13, 2011 the EEOC completed its investigation and determined that reasonable cause existed to believe Petitioner "was subjected to harassment, unequal terms and conditions of employment, and constructive discharge because of his race (Black), national origin (unalleged), and in retaliation for engaging in protected activity in violation of Title VII."

_____

prior to Plaintiff's pay reduction.

ECF No. 39-9. On December 5, 2011, the EEOC issued a Notice of Right to Sue. ECF No. 1-1.

Plaintiff filed the present complaint several months later. ECF No. 1

## STANDARD OF REVIEW

Summary judgment is proper if there are no issues of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 302 (4th Cir. 2006). A material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). A dispute of material fact is only "genuine" if sufficient evidence favoring the non-moving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248-49. However, the nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1986). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).

The Court may only rely on facts supported in the record, not simply assertions in the pleadings, in order to fulfill its "affirmative obligation . . . to prevent 'factually unsupported claims or defenses' from proceeding to trial." *Felty v. Grave-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (citing *Celotex*, 477 U.S. at 323-24). When ruling on a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255 (emphasis added). However, "if the evidence

is merely colorable or not significantly probative, it may not be adequate to oppose entry of summary judgment." *Thompson Everett, Inc., v. Nat'l Cable Adv.*, 57 F.3d 1312, 1323 (4th Cir. 1995).

## DISCUSSION

Defendants assert that there is no genuine dispute over material facts and they are entitled to summary judgment as a matter of law. First, they argue that Plaintiff's disparate impact claims and his claim of disparate treatment on the basis of national origin are procedurally barred because he failed to raise them in his EEOC charge. Second, Defendants argue that Plaintiff cannot establish *prima facie* cases for his remaining claims: (1) race-based disparate treatment, (2) retaliation; and (3) hostile work environment.

Plaintiff's disparate impact claims are procedurally barred for failure to raise them in his EEOC charge. His other claims of disparate treatment on the basis of race and national origin, retaliation, and hostile work environment are not similarly barred. However, Plaintiff has not established a prima facie case for any of those claims as required under the standard set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and therefore Defendants are entitled to summary judgment on all counts.

## I.      Exhaustion of Administrative Procedures

Congress gave initial enforcement responsibilities for claims of discrimination on the basis of race and national origin to the EEOC. 42 U.S.C. § 2000e-5(a). Thus, to file a civil action alleging discrimination under Title VII in federal court, plaintiffs must first file a charge of discrimination with the EEOC and exhaust the administrative process. *See* 42 U.S.C. § 2000e-5(f)(1); *Chacko v. Patuxent Inst.*, 429 F.3d 505, 508–09 (4th Cir. 2005). Once a charge has been filed, the EEOC must provide notice of the charges to the employer, conduct an investigation of

the charges, and determine whether there is reasonable cause to believe the charges are true. 42

U.S.C. § 2000e-5(b). The EEOC then attempts to remedy the alleged discrimination through

"informal methods of conference, conciliation, and persuasion." *Id*. Only after these steps have

been taken and informal conciliation has proven unsuccessful will the EEOC issue a Notice of

Right to Sue. *Id*. § 2000e-5(f)(1).

"The EEOC charge defines the scope of the plaintiff's right to institute a civil suit."

*Bryant v. Bell Atl. Md, Inc.*, 288 F.3d 124, 132 (4th Cir. 2002). If "the claims raised under Title

VII exceed the scope of the EEOC charge and any charges that would naturally have arisen from

an investigation thereof, they are procedurally barred." *See id*. at 132–133 (refusing to review the

merits of color and sex discrimination claims when plaintiff only alleged race discrimination in

his EEOC charge); *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 248 (4th Cir. 2000) (holding

plaintiff's retaliation claim was not procedurally barred because her EEOC charge raised the

issue even though the charge made different fact allegations than did the complaint); *Dennis v.*

*Cnty. of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995) (holding that Title VII claims of racial

discrimination in hiring, promotion, and training were procedurally barred because he did not

raise those allegations in his EEOC charge). Although this requirement is not meant as a

"tripwire for hapless plaintiffs," the mere fact that an EEOC charge is filed *pro se* does not

"automatically extend [the plaintiff] the right to a broad interpretation of the charge." *Byington v.*

*NBRS Fin. Bank*, 903 F. Supp. 2d 342, 349–350 (D. Md. 2012) (citing *Sydnor v. Fairfax Cnty.*,

681 F.3d 591, 594 (4th Cir. 2012)).

A. <u>Defendant is entitled to summary judgment for Plaintiff's disparate impact claims
because Plaintiff did not exhaust administrative procedures for those claims.</u>

An employee suffers disparate impact in violation of Title VII when an employment

policy or practice, although neutral on its face, nevertheless has a disproportionately

discriminatory impact on members of a protected group to which the employee belongs. *See Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 265 (4th Cir. 2005) (citing *Walls v. City of Petersburg*, 895 F.2d 188, 191 (4th Cir. 1990)). Disparate impact claims are distinct from disparate treatment claims; the allegation of one does not *ipso facto* give rise to the other. *See Carpenter v. Virginia Dep't of Transp.*, 5:06cv00035, 2006 WL 3314436 at *3 (W.D. Va. Nov. 14, 2006) ("While disparate treatment claims require proof of intent, disparate impact claims focus on the *results* of employment practices" (emphasis in the original)); *see also Pacheco v. Mineta*, 448 F.3d 783, 792 (5th Cir. 2006) (dismissing plaintiff's disparate impact claim where the EEOC charge alleged only disparate treatment racial discrimination).

The disparate impact claims Plaintiff raises in this suit are well outside the scope of the EEOC charge. Plaintiff's charge does not identify any facially neutral employment policy or practice, or specifically mention any Papa John's policy or practice at all. *See* ECF No. 39-7. His allegations at most show a pattern of disparate treatment directed at him on account of his race or national origin. *Id.* Although he claims he was paid less than Hispanic employees, the charge does not allege that this was as a result of an otherwise neutral company policy. *Id.* The only sense in which Plaintiff's charge could be read to claim disparate impact is if the totality of the alleged disparate treatment were deemed the result of a Papa John's policy giving too much discretion to managers. However, Plaintiff does not make that argument and there is no evidence the EEOC conducted an investigation along similar lines. *See* ECF Nos. 12, 39-9. It would be far too generous a construction of the charge for the Court to discover disparate impact hidden among his disparate treatment allegations. *See Byington*, 903 F. Supp. 2d at 349–350.

Moreover, Plaintiff does not actually dispute Defendants' claim that he failed to raise disparate impact in the EEOC charge. *See* ECF No. 39-1. His opposition brief erroneously

conflates disparate treatment and disparate impact; nowhere does Plaintiff argue or allege that he raised disparate impact in his charge. *Id*. There is thus no genuine dispute on this issue.

Because Plaintiff did not raise disparate impact in his charge, and an investigation into disparate impact would not reasonably arise from the charge, his claim is procedurally barred for failing to exhaust administrative procedures. Thus, Defendant is entitled to summary judgment on Plaintiff's race and national origin disparate impact claims.

B.  <u>Plaintiff exhausted the administrative procedures for his claim of disparate treatment on the basis of national origin.</u>

Defendants argue that Plaintiff's national origin disparate treatment claim is procedurally barred because he failed to raise it in his EEOC charge. ECF No. 45 at 6–7. They note that he did not check the appropriate box on the charge form and did not actually state his own national origin. *Id*.

Plaintiff did, however, allege in his EEOC charge that he received reduced pay and fewer opportunities to earn tips than did similarly situated Hispanic employees. ECF No. 39-7.  Courts have treated the term "Hispanic" as one capable of denoting either race or national origin for Title VII purposes. *Compare Rodriguez v. Kantor*, 162 F.3d 1155 (4th Cir. 1998) (unpublished) (national origin), *with Bautista v. Clemson Univ.*, 8:07-1287-HFF-WMC, 2009 WL 742721 at *10 (D.S.C. Mar. 20, 2009) (race). Plaintiff's charge narrative plausibly suggests that, in addition to race discrimination, he also experienced disparate treatment based on the fact that he is not of Hispanic origin. At least one court in the Fourth Circuit has held that "non-Hispanic" qualifies as a protected class for the purposes of stating a *prima facie* case of national origin disparate treatment. *See E.E.O.C. v. PBM Graphics Inc.*, 877 F. Supp. 2d 334, 344 (M.D.S.C. 2012) (holding that the EEOC met its burden of identifying a protected class for the purposes of a Title VII national origin discrimination claim by alleging defendant's practices discriminated against

non-Hispanic employees).[5]  Although Plaintiff did not check the box on the EEOC charge form indicating national origin discrimination, his description of the alleged discrimination makes that claim possible.  *Id.*[6]  Thus, Plaintiff's charge reasonably gave notice that he experienced discrimination because his national origin was non-Hispanic.  *See* ECF No. 39-7.  Accordingly, this Court will treat Plaintiff's allegation that he was discriminated against because he was not of Hispanic national origin as an allegation of national origin discrimination.

Defendants argue that Plaintiff's EEOC charge does not give reasonable notice that he alleged national origin discrimination and would not have given rise to an EEOC investigation of that issue. ECF No. 45 at 6–7. However, this is not like *Bryant* or other cases where the plaintiff raised novel bases for the alleged discrimination upon filing in civil court; here, Plaintiff simply failed to check a box but alleged national origin discrimination elsewhere on the document. *See, e.g., Bryant*, 288 F.3d at 132–133. To penalize Plaintiff solely for his failure to check a box, as Defendants would have the Court do, would inappropriately convert the administrative process into a "tripwire" for an unwary *pro se* complainant.

Because Plaintiff's EEOC charge narrative gave notice of a national origin disparate treatment claim, that claim is not procedurally barred. The Court will examine that claim, and Plaintiff's remaining claims of retaliation and hostile work environment on their merits under the *McDonnell Douglas* framework.

---

[5] Several circuits have also treated "non-Hispanic" as a protected class for Title VII purposes. *See, e.g., Meditz v. City of Newark*, 658 F.3d 364, 370 (3d Cir. 2011); *Mohr v. Dustrol, Inc.*, 306 F.3d 636, 639–640 (8th Cir. 2002) (overturned on other grounds).

[6] "I have been . . . paid lower wages than similarly situated Hispanic employees . . . No reasonable explanation has been given regarding why I am treated less favorably than similarly situated Hispanic employees." ECF No. 39-7.

II.     **Application of the *McDonnell Douglas* Standard**

In *McDonnell Douglas*, the Supreme Court established a burden-shifting framework for evaluating claims of employment discrimination and retaliation under Title VII. 411 U.S. 792. Under this framework, Plaintiff has the initial burden of establishing a *prima facie* case by a preponderance of the evidence. *McDonnell Douglas*, 411 U.S. at 802; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997), *overruled on other grounds by Baird v. Rose*, 192 F.3d 462 (4th Cir. 1999). Once Plaintiff has established a *prima facie* case, the burden of production shifts to the defendants to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). The defendant's burden here is "one of production, not persuasion." *Id.* Plaintiff must then prove by a preponderance of the evidence that the legitimate reasons offered by his employer are but a pretext for discrimination, thus creating an inference that Papa John's did act with discriminatory intent. *Id.* at 143. If Plaintiff cannot produce evidence demonstrating the falsity of Papa John's proffered reasons, then Defendants are entitled to summary judgment as a matter of law. *Id.* at 148.

A.   Plaintiff does not establish *prima facie* cases for his race and national original disparate treatment claims.

To prevail on a claim of disparate treatment, a plaintiff must establish that "(1) [he] is a member of a protected class; (2) [he] has satisfactory job performance; (3) [he] was subjected to an adverse employment action; and (4) similarly situated employees outside [his] class received more favorable treatment." *Prince-Garrison v. Md. Dept. of Health and Mental Hygiene*, 317 Fed. App'x 351, 353 (4th Cir. 2009). Adverse employment actions include decreases in pay or benefits and discharge, including constructive discharge. *See Boone v. Goldin*, 178 F.3d 253, 255–56 (4th Cir. 1999). Constructive discharge occurs when an employee resigns because the

"employer deliberately makes the working conditions intolerable in an effort to induce the employee to quit." *Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 186–187 (4th Cir. 2004) (internal quotations omitted).

Plaintiff fails to establish several of the requisite elements because he has not provided evidence supporting his allegations beyond "self-serving opinions or speculation." *See McCain v. Waste Mgmt.*, 115 F. Supp. 2d 568, 574 (D. Md. 2000). First, he has not shown that he had "satisfactory job performance." *Prince-Garrison*, 317 Fed. App'x at 353. Plaintiff's only evidence to that effect is his own opinion that he was an "exemplary" employee. ECF No. 12 at ¶12. Even if that self-serving allegation were somehow sufficient, Kerri Megivern, a Papa John's employee, avers in her affidavit that Plaintiff had a track record of tardiness and unapproved absences, including seven absences in the first month after the pay reduction notice was issued in May of 2008. ECF No. 45-1 at 3.[7]

Second, several of Plaintiff's allegations that he suffered an adverse employment action also fail for want of supporting evidence. He alleges variously that: (1) his pay was reduced; (2) his pay was withheld for taking breaks; (3) he was prevented from earning as much as other employees because he was limited to two deliveries per trip; and (4) he was constructively discharged. ECF No. 12 at ¶¶ 13, 25, 28. That Plaintiff's pay was reduced to $5.15 is not disputed. However, Plaintiff has provided no evidence whatsoever that his pay was withheld for taking breaks or that he was denied a computer password that would have allowed him to earn

---

[7] Defendants also provide substantial time sheet data supporting the Megivern affidavit. ECF Nos. 31-5, 45-2, 45-3. Plaintiff raises an objection to the use of that data for summary judgment purposes. ECF No. 39-1 at 10. However, it is unnecessary for the Court to consider that data or Plaintiff's objections thereto because Plaintiff has not met his burden to provide evidence supporting his allegations. His own opinion of whether his job performance was satisfactory is insufficient to establish this element of a prima facie case. *See McCain v. Waste Mgmt.*, 115 F. Supp. 2d 568, 574 (D. Md. 2000).

more tips. He has not provided pay stubs cross-referenced with hours worked, supportive affidavits beyond his own, or anything that would lend plausibility to the unsubstantiated allegations in his complaint. Plaintiff also has not provided any evidence beyond his bare allegations that he was subjected to an intolerable work environment that would lead a reasonable person to resign. Plaintiff's only allegation here that passes muster is that his pay was reduced from $6.15 per hour to $5.15 per hour.

Third, Plaintiff also fails to demonstrate that "similarly situated employees outside [his] class received more favorable treatment." *Prince-Garrison*, 317 Fed. App'x at 353. Plaintiff provides no evidence supporting his allegation that Hispanic employees were protected against pay reduction.

Because Plaintiff has not provided any evidence supporting the allegations in his complaint, he has not established a *prima facie* case of racial or national origin disparate treatment in violation of Title VII. For that reason, under the *McDonnell Douglas* standard, Defendants are entitled to summary judgment on those claims.

B. Plaintiff does not establish a *prima facie* case for his retaliation claim.

To state a claim for retaliation in violation of Title VII, a plaintiff must show that (1) he was engaged in a protected activity, (2) the defendant acted adversely against him, and (3) that there was a causal connection between the first two elements. *See Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007). "Protected activity" includes contesting an unlawful employment practice, either through formally participating in an EEOC investigation or through "opposing" the practice. *See McNair v. Computer Data Systems, Inc.*, 172 F.3d 863 (4th Cir. 1999) (unpublished). The opposed practice must be unlawful under Title VII and not merely an "unfair" practice. *Id.* at *5. A plaintiff must also present some evidence of actual opposition to

discrimination and not merely a self-serving characterization of some communication with his employer. *Id*. at * 5 (holding plaintiff failed to show a particular letter constituted opposition to discriminatory treatment where the court did not have the actual letter, only the plaintiff's characterization of the letter).

Plaintiff has not shown he was engaged in a protected activity. He did not file an EEOC charge until after he left Papa John's. ECF No. 12 at ¶ 29. Therefore, if Plaintiff did contest some unlawful Papa John's practice, it would have been through informal opposition to a discriminatory practice. However, the record shows only that he wrote three letters of complaint to superiors prior to leaving Papa John's, none of which alleges Defendants engaged in discriminatory behavior or otherwise acted in violation of Title VII. ECF Nos. 39-2–39-4.[8] Plaintiff also alleges that he placed a phone call to Dave Parnigoni, Papa John's Vice President of Operations, but his uncorroborated description of that call cannot, on its own, show that he was engaged in a protected activity. *See McNair*, 172 F. 3d 863 at *5. Without any actual evidence suggesting that he was engaged in a protected activity, Plaintiff has failed to establish a *prima facie* claim of retaliation.

C.   Plaintiff does not establish a prima facie case for his hostile work environment claim.

To establish a race-based hostile work environment claim, a plaintiff must show that he was subjected to harassment that was (1) unwelcome, (2) based on his race, (3) severe or pervasive, and (4) could be imputed to his employer. *See Graham v. Prince George's Cnty.*, 191 Fed. App'x 202, 204 (4th Cir. 2006). Factors going to the severity and pervasiveness of discriminatory harassment include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it

unreasonably interferes with an employee's work performance." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993); *see also Spriggs*, 242 F.3d at 184 (finding a race-based hostile work environment when plaintiff was "exposed on a 'continuous daily' basis" to the defendant's racist remarks about African-Americans); *Oladokun v. Grafton Sch., Inc.*, 182 F. Supp. 2d 483, 493–494 (D. Md. 2002) (holding two instances in which a supervisor used the word "nigger," though odious and more than a "mere offensive utterance," were not alone severe or pervasive enough to create a hostile work environment).

Plaintiff here raises several allegations of harassment; however, he is unable to show that there were any racially-motivated instances of harassment sufficiently severe or pervasive to be actionable under Title VII. Only a single, vague allegation that Plaintiff was called "nigger" by an unidentified coworker an unspecified number of times bears any relation to his race. ECF No. 12 at ¶ 26.[9] That allegation is neither specific enough nor otherwise supported by any evidence outside the complaint or Plaintiff's affidavit. Even if such a hateful slur was actually directed at Plaintiff, one or several isolated incidents of the use of the word "nigger," though detestable, do not constitute "severe or pervasive" conduct. *See Oladokun*, 182 F. Supp. 2d at 494. Plaintiff therefore has not established a *prima facie* case of hostile work environment under Title VII and Defendants are entitled to summary judgment on that claim.

---

[8] The letters instead request that management investigate allegedly insulting and violent behavior by a coworker and demand the return of improperly withheld pay. ECF Nos. 39-2–39-4.

[9] Plaintiff does not allege any racially-charged language was used during the two altercations he describes in detail, nor does he explicitly claim that those incidents occurred because of his race. ECF Nos. 12 at ¶¶ 14–21, 39-13. At most, they were fueled by an unpleasant supervisor, but mere unpleasantness is not "severe and pervasive" harassment under Title VII. *See Oladokun*, 182 F. Supp. 2d at 494.

**CONCLUSION**

For the foregoing reasons, Defendants' Motion for Summary Judgment [ECF No. 31]

shall be granted.

A separate Order follows.


Date:  <u>July 17, 2013</u>                                         <u>            /s/            </u>
                                                              ROGER W. TITUS
                                                              UNITED STATES DISTRICT JUDGE